

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON
1050 SW SIXTH AVENUE, #700
PORTLAND, OREGON 97204
(503) 326-1536

**PETER C. McKITTRICK**
BANKRUPTCY JUDGE

KATIE DEVLIN
LAW CLERK

TONIA McCOMBS
LAW CLERK

December 13, 2021

Rachel Wolf
370 Meyers St. South
Salem, OR 97302

Gregory J. Christensen
P.O. Box 2039
Corvallis, OR 97339

      Re:  In re Godofredo Lee Quiroz, Case 19-63163-pcm7
           Wolf v. Quiroz, Adv. P. 20-6001-pcm

Dear Ms. Wolf and Mr. Christensen:

      The purpose of this letter is to rule on the trial held on November 3, 2021, in the above referenced adversary proceeding. In her First Amended Complaint, Doc. 13, Plaintiff alleges that Debtor owes her a debt that is nondischargeable under § 523(a)(2)(A),[1] and that he should be denied a discharge under § 727(a)(2)(A), (a)(3), and (a)(4)(A) and (B).[2] Plaintiff also asserts a claim against Debtor for financial abuse under ORS 124.110. Both parties have consented to entry of final judgment by this court.

      For the reasons set forth below, Debtor's discharge will be denied under § 727(a)(2)(A). Because the court is denying Debtor's discharge under § 727(a)(2)(A), it will not decide the merits of Plaintiff's other claims for denial of discharge under § 727. Plaintiff's claim under § 523(a)(2)(A) is moot in light of the court's decision that Debtor must be denied a discharge. Therefore, the court will not address Plaintiff's § 523(a)(2)(A) claim further in this letter. See,

---

[1]     Unless otherwise noted, all references to chapters and sections are to the Bankruptcy Code, 11 U.S.C. § 101, et seq.

[2]     Plaintiff also asserted a claim under § 727(a)(5) but withdrew that claim in her trial brief. Doc. 240.

e.g., In re Martinez, 500 B.R. 608, 635 (Bankr. N.D. Cal. 2013). Finally, the court will deny Plaintiff's claim for financial abuse under ORS 124.110.[3]

Facts

In February of 2019, Plaintiff obtained a state court general judgment against Debtor and two of his business entities, Valley Auto Works, LLC (VAW) and Carburetor and Engine Performance, LLC. Exhibit D. On March 7, 2019, Plaintiff garnished Debtor's VAW Oregon State Credit Union (OSCU) bank account in partial satisfaction of that judgment. Exhibit 26.

The next day, on March 8, 2019, Debtor assisted an associate of his, Patrick Neufeld (Neufeld), in the formation of a new business entity called Valley Auto. Exhibit 26. Debtor filled out the business registration form, and Neufeld signed it as the registered owner of Valley Auto. Exhibit 30. Also on March 8, Debtor drove Neufeld to OSCU to assist Neufeld in opening a checking account for Valley Auto (the Valley Auto Checking Account). Exhibit 26. The Valley Auto Checking Account was closed in early September of 2019, after Debtor and Neufeld had a falling out. As will be discussed in more detail below, Debtor made extensive use of the Valley Auto Checking Account prepetition.

Plaintiff pursued further collection of the state court judgment after she garnished the VAW OSCU bank account. On June 18, July 18, and July 24 of 2019, Plaintiff conducted state court debtor exams. Exhibit 2. At the first exam on June 18, Debtor stated his intent to file bankruptcy. In response, a state court judge instructed Debtor that he was prohibited from disbursing or concealing any personal or business assets and that only expenditures necessary for survival, such as housing, were allowed. Exhibit 2, pp. 10-11. At the second exam, on July 18, Debtor stated that he was not doing business and that neither he nor his wife had any bank accounts.[4] Exhibit 2, p. 30. At the third debtor exam, on July 24, Debtor reiterated that he had not conducted business as VAW since March or April of that year and that his only source of income was that earned by his wife. Exhibit 2, pp. 53-56.

Debtor filed his chapter 7 petition on October 18, 2019. Exhibit 47. On Schedule I, Debtor stated that he was employed as a "Service Writer" by Valley Auto, earning $960 and month and that he had $1,500 in additional monthly income earned from "Sidework."[5] Exhibit 47, pp. 30-31.

---

[3] Plaintiff filed a third pretrial motion for terminating sanctions. Doc. 203. The court finds that terminating sanctions are not appropriate and will prepare an order denying that motion.

[4] Plaintiff admonished Debtor repeatedly during the debtor exams that Oregon is a community property state. That is incorrect. Oregon is not a community property state.

[5] Plaintiff prepared a report of Debtor's alleged income over a period of years, see Exhibit 18, and argued at trial that Debtor's discharge should be denied because he underreported his prepetition income for 2017-2019 in his chapter 7 petition. The court will not deny Debtor's discharge on that basis. The record in this matter is not sufficient to establish the precise amount of Debtor's income during the pertinent years or that Debtor underreported his income when he filed bankruptcy.

Plaintiff testified that Debtor was never employed at Valley Auto by Neufeld. Debtor did not dispute Plaintiff's testimony and there is no evidence in the record that Debtor ever received any payments from Valley Auto as an employee. The court finds that Debtor was not an employee of Valley Auto. Instead, Debtor used Valley Auto to conceal assets derived from the ongoing operation of his own auto repair business after the garnishment of the VAW OSCU bank account to hinder further collection efforts by Plaintiff.

Analysis

I. Denial of Discharge under § 727

Section 727 is construed liberally in favor of a debtor and strictly against the party objecting to discharge. In re Beauchamp, 236 B.R. 727, 730 (9th Cir. BAP 1999). The burden is on the plaintiff to show, by a preponderance of the evidence, that the requirements of § 727 are met. Id.; Fed. R. Bankr. P. 4005. Section 727(a)'s purpose is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs. In re Cox, 41 F.3d 1294, 1296 (9th Cir. 1994). "While the burden of persuasion rests at all times on the [plaintiff] objecting to the discharge, it is axiomatic that the debtor cannot prevail if he fails to offer credible evidence after the [plaintiff] makes a prima facie case. In re Reed, 700 F.2d 986, 992-93 (5th Cir. 1983)." In re Devers, 759 F.2d 751, 754 (9th Cir. 1985). See also In re Hansen, 368 B.R. 868, 876 (9th Cir. BAP 2007)(a debtor's failure to offer a satisfactory explanation when called on by the court is a sufficient ground for denial of discharge).

Section 727(a)(2) provides that the court shall grant a debtor a discharge unless

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> (A) property of the debtor, within one year before the date of the filing of the petition[.]

To deny a debtor a discharge under § 727(a)(2)(A), the plaintiff must show that (1) the debtor transferred or concealed property; (2) the property belonged to the debtor; (3) the transfer or concealment occurred within one year before the bankruptcy was filed; and (4) the debtor acted with the intent to hinder, delay or defraud a creditor or an officer of the estate. In re Aubrey, 111 B.R. 268, 273 (9th Cir. BAP 1990).

The intent to hinder, delay or defraud must be actual, as opposed to constructive intent, but intent may be inferred from the actions of the debtor and the surrounding circumstances. In re Woodfield, 978 F.2d 516, 518-19 (9th Cir. 1992); Devers, 759 F.2d at 753-54. "A debtor's intent need not be fraudulent to meet the requirements of § 727(a)(2). Because the language of the statute is in the disjunctive it is sufficient if the debtor's intent is to hinder or delay a creditor." In re Retz, 606 F.3d 1189, 1200 (9th Cir. 2010)(citing In re Bernard, 93 F.3d 1279, 1281 (9th Cir. 1996)).

Plaintiff testified that, despite Debtor's representations to the contrary at the state court debtor exams, Debtor continued to conduct business under the name of VAW after Plaintiff garnished the VAW OSCU checking account. Debtor concedes as much in his trial brief. However, instead of using a bank account that he or one of his business entities owned, Debtor used the account of a third party, Valley Auto, to conceal the existence of assets in which he had an interest with the intent of hindering further collection efforts by Plaintiff. Section 727(a)(2) does not permit a debtor to frustrate a creditor's collection efforts by "diverting the fruits of [the debtor's] industry" in such a manner. In re Coady, 588 F.3d 1312, 1316 (11th Cir. 2009).

The Valley Auto Checking Account Statements for the period from March to September of 2019 can be found in Exhibit 12. Plaintiff testified that although the account did not belong to Debtor, he used it as if it was his own. Debtor did not dispute Plaintiff's testimony. In fact, Debtor admitted during discovery that he linked the Valley Auto Checking Account to PayPal and Square accounts owned or controlled by him.[6] Exhibit 26. Debtor admitted to initiating multiple transfers into and out of the Valley Auto Checking Account, using Valley Auto's debit card for the account, making ATM withdrawals, and using the account to pay business and personal expenses. Exhibit 26. For example, Debtor used the Valley Auto Checking Account to pay the fee to formally dissolve VAW in July of 2019. Exhibit 26. Debtor also used the Valley Auto Checking Account to pay his residential rent for April through September of 2019. Exhibit 41.

Debtor's intent to hinder further collection efforts by Plaintiff is apparent from his actions and the surrounding circumstances, the most significant of which is that Debtor orchestrated the formation of Valley Auto and the opening of its bank account one day after Plaintiff garnished the VAW OSCU account. Also significant is the fact that Debtor continued to use the Valley Auto Checking Account after the state court judge instructed him not to disburse or conceal any personal or business assets. The existence of a prior relationship between Debtor and Neufeld is an additional factor suggesting that Debtor intended to hinder further collection efforts by Plaintiff. Debtor does not offer, and the court cannot discern, any other possible explanation. Therefore, the court must deny Debtor's discharge under § 727(a)(2)(A).

II. Financial Abuse Under ORS 124.110

Plaintiff asserts a claim for financial abuse under ORS 124.110, alleging she is a disabled and vulnerable person within the meaning of Oregon's financial abuse law. The claim, as stated in the complaint, is not entirely clear. However, Plaintiff clarified at the beginning of the trial that she believes she is entitled to trebled costs in this adversary proceeding because of Debtor's alleged fraudulent attempts to avoid paying the state court judgment.

---

[6] Debtor had both a personal and VAW PayPal account. Exhibits 10, 11. The Square account open during the pertinent time was held in the name of VAW. Exhibit 8. Debtor did not operate VAW in a manner that observed corporate formalities. For example, he used the VAW OSCU checking account to pay his residential rent in January, February, and March of 2019. Exhibit 41.

As pertinent here, ORS 124.110 provides:

(1) An action may be brought under ORS 124.100 for financial abuse in the following circumstances:

> (a) When a person wrongfully takes or appropriates money or property of a vulnerable person, without regard to whether the person taking or appropriating the money or property has a fiduciary relationship with the vulnerable person.
>
> (b) When a vulnerable person requests that another person transfer to the vulnerable person any money or property that the other person holds or controls and that belongs to or is held in express trust, constructive trust or resulting trust for the vulnerable person, and the other person, without good cause, either continues to hold the money or property or fails to take reasonable steps to make the money or property readily available to the vulnerable person when:
>
>> (A) The ownership or control of the money or property was acquired in whole or in part by the other person or someone acting in concert with the other person from the vulnerable person; and
>>
>> (B) The other person acts in bad faith, or knew or should have known of the right of the vulnerable person to have the money or property transferred as requested or otherwise made available to the vulnerable person.

ORS 124.110. There are at least two problems with Plaintiff's financial abuse claim.

First, the court does not believe that a debtor's efforts to avoid paying a debt, even if those efforts are wrongful, constitute financial abuse under ORS 124.110. Plaintiff does not specify upon which subsection of ORS 124.110(1) she relies, but neither is applicable. Subsection (a) of ORS 124.110(1) does not apply, because that subsection is limited to situations where a person wrongfully takes money or property owned by a vulnerable person. <u>Schmidt v. Noonkester</u>, 287 Or. App. 48 (2017).

> Paragraph (1)(b) . . . applies to circumstances where the vulnerable person entrusts his or her money or property to the other person and later requests its return, but the other person in bad faith refuses to return it. Under that provision, an action for financial abuse requires proof of several elements. The first element in time (although it appears in the middle of the provision) is that "[t]he ownership or control of the money or property was acquired in whole or in part by the other person * * * from the vulnerable person." ORS 124.110(1)(b)(A). That element does not require that there be wrongful conduct in the acquisition of the money or property, but it does require that the money or property at issue be acquired in whole or in part by the person from the vulnerable person. The second element is the vulnerable person's request to the other person that the other person "transfer" to the vulnerable person any money or property that "belongs to" the vulnerable person, and the third element is that the other person "without good cause" continue to hold the money or property that "belongs to" the vulnerable person. ORS

124.110(1)(b). The fourth element is that the other person have acted "in bad faith, or knew or should have known of the right of the vulnerable person to have the money or property transferred as requested." ORS 124.110(1)(b)(B).

Bates v. Bankers Life & Cas. Co., 362 Or. 337, 344 (2018). The court in Bates held that an insurance company's intentional, bad faith failure to pay a claim is not financial abuse under ORS 124.110(1)(b). The reasoning of Bates applies here. The acquisition of money or property from a vulnerable person is an essential element of subsection (b) of ORS 124.110, and a debtor's bad faith refusal to pay a debt does not qualify. See also Wetch v. Crum & Forster Commercial Ins., 2018 U.S. Dist. LEXIS 223615, *51 (D. S.D. December 6, 2018)(ORS 124.110 applies only in "bailment situations").

Second, even if the court is wrong on the first point, only a "vulnerable person" may bring an action for financial abuse under ORS 124.110(1)(a) and (b). A "person with a disability" qualifies as a "vulnerable person" only if they are "susceptible to force, threat, duress, coercion, persuasion or physical or emotional injury because of the person's physical or mental impairment." ORS 124.100(1)(e)(D). Plaintiff did not explain how, and the court has no evidence that, she is a vulnerable person within the meaning of ORS 124.100. Indeed, all indications are to the contrary given Plaintiff's dogged pursuit of her claims against Debtor over the course of many years. The court will deny Plaintiff's claim for financial abuse under ORS 124.110.

## Conclusion

For the reasons set forth above, the court will prepare and enter a judgment denying Debtor's discharge and Plaintiff's claim for financial abuse under ORS 124.110.

Sincerely,

PETER C. MCKITTRICK
Bankruptcy Judge